### In re AMERECO ENVIRONMENTAL SERVICES, INC., Debtor.

**Bankruptcy No. 90–40502–2–11.**

United States Bankruptcy Court,
W.D. Missouri.

April 3, 1991.

Charles L. House, Kansas City, Mo., for debtor.

Frank Wendt, Rodney J. Hoffman, Kansas City, Mo., for Chemical Disposal Co.

Neil L. Johnson, Office of U.S. Trustee, Kansas City, Mo., for Bud's Oil Service, Inc.

Jerald S. Meyer, Armstrong, Teasdale, Schlafly, Davis & Dicus, Kansas City, Mo., for Unsecured Creditors' Comm.

## MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Amereco Environmental Services, Inc. (hereinafter AES), filed its petition for reorganization under Chapter 11, Title 11, United States Code, on February 26, 1990. The Creditors' Committee filed a proceeding on July 24, 1990 to substantively consolidate AES's estate with the subsidiaries, i.e., Amereco–Phoenix, Inc. (hereinafter API), Amereco–Kansas City, Inc. (hereinafter AKCI) and Amereco–Arizona, Inc. (hereinafter AAI). No creditor objected thereto although notice of the action was sent to all creditors. On October 2, 1990, this Court entered an order granting substantive consolidation. Once the time for an appeal had passed and no action had been taken by any party, the Creditors' Committee moved for an order of the Court that the date of the filing of the petitions of the subsidiaries be deemed to be February 26, 1990.

Such a requested exercise of the Court's equitable powers attracted considerable opposition from at least two parties, i.e., Bud's Oil Service, Inc. and Chemical Disposal Company. *In re Continental Vending Machine Corp.*, 517 F.2d 997 (2nd Cir. 1975). Bud's Oil Service (hereinafter BOS) had sold the chemical waste facility to either AES or to API and then had repurchased said facility from either AES or API. Further, BOS had subsequently sold said facility to a third party on or about November 1, 1990. Chemical Disposal Company (hereinafter CDC) had furnished transportation services to API. On September 10, 1989, CDC cut API off from services. In an apparent effort to re-establish the services, the comptroller of AES wrote a letter to CDC and promised to pay the debt of API. When that written promise was not followed by money, CDC filed suit in Pima County Superior Court against API and AES. The allegation was that the services had been rendered to API, that the liability of AES was based on the written promise to pay the debt of its subsidiary.

AES filed bankruptcy and CDC ceased prosecution of its claim against it. On April 5, 1990, CDC obtained judgment against API for $28,941.89 plus attorney fees and interest and costs. Meanwhile, API without recourse to this Court, had resold the waste disposal facility in Arizona to BOS. BOS had given API a promissory note for a portion of the purchase price. CDC, on June 6, 1990, issued garnishment to BOS to enforce its judgment against API and will be paid from the payments to be made on said note if this Court does not nunc pro tunc declare the February 26, 1990 date to be the filing date of API. The problems encountered by the Trustee in *Mixon v. Anderson*, 816 F.2d 1222 (8th

Cir.1987) do not arise here because it would not be the trustee or DIP pursuing alter ego theories. If the Court does enter the nunc pro tunc order, then the funds will go into the estate. There is little disagreement to the foregoing facts, however, as to the law to be applied to those facts, there is substantial disagreement between the parties.

The seminal case concerning nunc pro tunc orders as to the petition date of subsidiaries of post petition consolidations is *In re Auto–Train Corp., Inc.,* 810 F.2d 270 (D.C.Cir.1987). In that case the Trustee sought "to consolidate the assets and liabilities of Railway into the Auto–Train estate". The Bankruptcy Court issued such an order effective *nunc pro tunc* some two and one-half months earlier than the consolidation date. The Circuit Court treated the matter in a disjunctive fashion and effectively bifurcated the process into two steps: (1) should the subsidiary be consolidated, and (2) should the consolidation include a nunc pro tunc feature. As might be expected, the requirements for the second step are more rigorous than those for the first.

■ As to the first step, the D.C. Circuit stated that a bankruptcy court should ensure:

(1) that a substantial identity exists between the entities to be consolidated,

(2) that consolidation is necessary to realize some benefit. l.c. 276.

As to the second step, the D.C. Circuit believed that a bankruptcy court must undertake an additional and slightly different balancing process before using its equitable nunc pro tunc powers to give a consolidation order retroactive effect. Although the D.C. Circuit contemplated a contested proceeding in regard to the consolidation, and although such an event did not occur in this case, this Court believes that the same factors are involved in the nunc pro tunc aspect as the original consolidation. In addition the bankruptcy court must specifically determine that the benefits of this extraordinary remedy clearly outweigh any detriments to potential preference creditors. Such a creditor is entitled to show its reliance on the separate credit of one of the entities sought to be consolidated. Such a creditor must also show that it will be harmed by the shift in filing dates. In other words, an objecting and potentially aggrieved creditor may interpose the defense of reasonable reliance on the separate credit of the originally non-debtor entity at either stage of the proceedings.

Applying these principles to the two objecting creditors, leads the Court to diverse results. In the case of BOS, the Court concludes that BOS did not establish a reasonable, separate reliance on the credit or existence of API. It entered into a paper writing (whether termed a letter of intent or a contract) to which AES along with API was a party. AES guaranteed API's performance. The Court apprehends that the fact of the guarantee alone would be sufficient to negate the theory of reliance on separate identity or credit. Certainly the evidence as a whole convinces the Court that BOS believed it was dealing with AES as much as it was dealing with API.

However, as to CDC, the Court comes to a contrary conclusion. The testimony of CDC's officer was convincing, albeit displaying a degree of naivete usually not shown by a business concern, that CDC dealt with API alone. The Court believes that CDC extended its services upon the credit of API and never heard of AES until AES wrote the ill-fated letter. This raises the question to what time does the knowledge of the community of entities become important? If it is at the time of the extension of the credit, CDC fulfills all requirements as a bona fide, due reliance creditor. On the other hand, if it is when the preference is actually obtained, neither the record as to when that was, nor the heretofore pristine robe of CDC is quite so spotless.

The Court concludes that the appropriate test is the knowledge of CDC at the time it actually extended the credit. The fact that CDC found out about AES after it had furnished the services to API and already cut off API from further credit extensions

does not taint the prior extensions of credit.

 In view of all the above factors presented, the Court concludes that the only guaranteed benefit to be obtained from the nunc pro tunc aspect of consolidation is the avoidance of CDC's lien on the note from BOS to API. That benefit is not sufficient to outweigh the potential harm to CDC, BOS and even the consolidated estate. There is no evidence before the Court that some other disposition of API's facility would result in additional funds for the estate. This latter situation could arise if BOS or other potential operators decided not to buy the site because of the clean up liabilities inherent in the acquisition at this late date. BOS may have more material on hand or may have suffered some kind of "spill" that would make the entire facility a true white elephant. The Court is extremely concerned over disturbing an apparently working solution to a potentially disastrous problem which may not be abandonable.

The Court, therefore, DENIES the Motion of the Creditors' Committee and ORDERS that the filing dates of the substantively consolidated entities be designated as October 2, 1990.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required under rule 7052, Rules of Bankruptcy.

SO ORDERED.