**In re GERARDO LEASING, INC., Debtor.**

**In re GERARDO & SONS MOTOR SERVICE, INC., Debtor.**

**In re GETCO, INC., Debtor.**

**William A. BRANDT, Jr., Trustee, Plaintiff,**

v.

**Vito GERARDO, Defendant.**

**Bankruptcy Nos. 91 B 08499, 91 B 10562 and 91 B 10562. Adv. No. 93 A 0234.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Oct. 3, 1994.

Andrew J. Maxwell, Steven S. Potts, Law Offices of Andrew Maxwell, Chicago, IL, for plaintiff.

Michael L. Gesas, Kenneth A. Fedinets, Gesas Pilati & Gesas, Ltd., Chicago, IL, for defendant.

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

This adversary proceeding is related to the consolidated bankruptcy cases of three business entities, each filing under Chapter 7 of the Bankruptcy Code: Gerardo Leasing, Inc. ("Gerardo Leasing"), Gerardo & Sons Motor Service, Inc. ("Gerardo & Sons"), and Getco, Inc. ("Getco"). Plaintiff William A. Brandt, Jr., Trustee for each of the three debtors, filed this five-count adversary complaint on behalf of the estate of Debtors Gerardo & Sons and Gerardo Leasing to recover certain alleged fraudulent transfers pursuant to § 548(a) of Title 11 U.S.C. and Ill.Rev.Stats., ch. 59, para. 105 (1991), and certain alleged preferential transfers pursuant to 11 U.S.C. § 547(b). Defendant Vito Gerardo has moved to dismiss Counts III, IV, and V of the Trustee's Second Amended Adversary Complaint, asserting that the two year statute of limitations set forth in 11 U.S.C. § 546(a) bars the Trustee from pursuing claims in those counts. For reasons stated herein, that motion is denied without prejudice to considering the same issues following trial.

## INTRODUCTION

This involves administration of Chapter 7 proceedings for three related business entities: Gerardo Leasing, Gerardo & Sons, and Getco. Debtor Gerardo Leasing filed a petition for relief under Chapter 11 of the Bankruptcy Code on April 19, 1991, and the case was converted to Chapter 7 in bankruptcy on May 20, 1991. Debtor Gerardo & Sons filed a petition for relief under Chapter 11 on May 20, 1991, and that case was converted to one

under Chapter 7 on August 2, 1991. Finally, Debtor Getco filed its petition for relief under Chapter 11 on July 19, 1991, and that case was converted to one under Chapter 7 on November 27, 1991.

William A. Brandt, Jr. was appointed Trustee (the "Trustee") on the date of conversion to Chapter 7 in each of the three bankruptcy proceedings. He has qualified and has been acting as such since his appointment. On February 17, 1993, the Trustee filed his original Complaint in this adversary proceeding ("Original Adversary Complaint") on behalf of the estate of Debtor Gerardo & Sons, naming Vito Gerardo as defendant.

### Pleadings in Original Complaint

Count I of the Original Adversary Complaint sought to recover $22,500.00 allegedly transferred from accounts of Debtor Gerardo & Sons to Vito Gerardo in violation of Illinois' fraudulent conveyance statute, Ill.Rev. Stat., ch. 59, para. 105 (1992). The allegedly fraudulent transfers purportedly consisted of a series of $1,500.00 checks tendered weekly for fifteen weeks from an account held by Debtor Gerardo & Sons at Northwest Commerce Bank.[1] The earliest check listed by the Trustee was drawn on December 29, 1989, and the last drawn on April 7, 1990. Count II sought to compel, pursuant to § 542 of the Bankruptcy Code, turnover of an auto-

mobile scheduled as an asset of Gerardo & Sons' estate and indicated as being in Vito Gerardo's possession.

### Additional Allegations in Trustee's Subsequent Pleadings

When the Trustee qualified in the underlying bankruptcy proceedings, he maintained that most or all of the Debtors' financial records covering the period from at least 1989 through the time of conversion of the Debtors' cases were neither present at the Debtors' place of business nor turned over to him. On July 22, 1993, however, the Trustee says he learned that some of Debtors' more recent business records could be found in an abandoned semi-trailer parked on the lot of Debtors' business premises. Four days later, on July 26, 1993, the Trustee inspected the semi-trailer and discovered roughly 150 boxes of Debtors' most recent and previously missing business and financial records. The records included, *inter alia,* original canceled checks, bank statements, and ledgers reflecting the transfers from Debtors' accounts to Vito Gerardo, now alleged in the Trustee's Second Amended Complaint.

On August 26, 1993, one month after discovering the Debtors' heretofore "missing" records, the Trustee filed a motion to consolidate substantively the three bankruptcy estates because of the asserted "extensive intermingling" of the three Debtors' financial

---

1. Transfers alleged from account of Gerardo & Sons to Vito Gerardo:

Northwest Commerce Bank—Account No. 536431:

| DATE | CHECK # | AMOUNT |
|---|---|---|
| 12/29/89 | 1402 | $ 1,500.00 |
| 01/05/90 | 1401 | $ 1,500.00 |
| 01/13/90 | 1450 | $ 1,500.00 |
| 01/20/90 | 1502 | $ 1,500.00 |
| 01/26/90 | 1546 | $ 1,500.00 |
| 02/05/90 | 1603 | $ 1,500.00 |
| 02/10/90 | 1639 | $ 1,500.00 |
| 02/17/90 | 1685 | $ 1,500.00 |
| 02/23/90 | 1777 | $ 1,500.00 |
| 03/02/90 | 1821 | $ 1,500.00 |
| 03/09/90 | 1899 | $ 1,500.00 |
| 03/17/90 | 1935 | $ 1,500.00 |
| 03/23/90 | 2037 | $ 1,500.00 |
| 03/31/90 | 2102 | $ 1,500.00 |
| 04/07/90 | 2179 | $ 1,500.00 |
| SUBTOTAL | | $22,500.00 |

affairs and the incompleteness of the financial records of each entity. Following a hearing, this Court granted that motion by order on October 7, 1993. Shortly thereafter, the Trustee moved for leave to amend his Original Adversary Complaint, and that was allowed.

### First Amended Complaint

Filed on November 19, 1993, more than two years from the date the Trustee was first appointed in the Gerardo Leasing Case, the Trustee's five-count First Amended Adversary Complaint included three new counts based on separate transfers from accounts of Debtor Gerardo Leasing to Vito Gerardo. Count III sought under § 548(a) of Title 11 U.S.C., to recover $31,500.00 that Gerardo Leasing purportedly transferred fraudulently to Vito Gerardo within one year before filing its bankruptcy petition. These alleged transfers allegedly consisted of a series of nineteen separate $1,500.00 checks drawn on an account of Gerardo Leasing at Northwest Commerce Bank and a series of five $1,500.00 checks drawn on an account of Gerardo Leasing at Parkway Bank & Trust.[2] The alleged checks were each dated weekly, beginning the week after Vito Gerardo received his last weekly $1,500.00 check from Gerardo & Sons, and they were written regularly for the next nineteen weeks. Gerardo Leasing allegedly tendered the first fraudulent transfer shortly before April 20, 1990, and continued to do so on a weekly basis through the last payment, drawn on September 22, 1990.

Count IV of the First Amended Complaint sought to recover $1,500.00 paid by Gerardo Leasing to Vito Gerardo on April 13, 1990, in alleged contravention of Illinois' fraudulent conveyance statute, Ill.Rev.Stats., ch. 59,

2. Transfers alleged from accounts of Gerardo Leasing to Vito Gerardo:

Northwest Commerce Bank—Account No. 537209

| DATE | CHECK # | AMOUNT | |
|---|---|---|---|
| 04/13/90 | 2113 | $ 1,500.00 | (Count IV) |
| 04/20/90 | 2121 | $ 1,500.00 | (First Count III transaction) |
| 04/28/90 | 2131 | $ 1,500.00 | |
| 05/05/90 | 2142 | $ 1,500.00 | |
| 05/16/90 | 2150 | $ 1,500.00 | |
| 05/18/90 | 2159 | $ 1,500.00 | |
| 05/25/90 | 2172 | $ 1,500.00 | |
| 06/01/90 | 2182 | $ 1,500.00 | |
| 06/09/90 | 2196 | $ 1,500.00 | |
| 06/16/90 | 2208 | $ 1,500.00 | |
| 06/30/90 | 2234 | $ 1,500.00 | |
| 07/10/90 | 2251 | $ 1,500.00 | |
| 07/14/90 | 2269 | $ 1,500.00 | |
| 07/23/90 | 2283 | $ 1,500.00 | |
| 08/13/90 | 2243 | $ 750.00 | |
| 08/13/90 | 2244 | $ 750.00 | |
| 08/13/90 | 2245 | $ 750.00 | |
| 08/13/90 | 2246 | $ 750.00 | |
| 08/20/90 | 2364 | $ 750.00 | |
| 08/20/90 | 2365 | $ 750.00 | |
| SUBTOTAL | | $25,500.00 | |

Parkway Bank & Trust Co.—Account No. 094013

| DATE | CHECK # | AMOUNT |
|---|---|---|
| 8/25/90 | 1002 | $ 1,500.00 |
| 8/30/90 | 1012 | $ 1,500.00 |
| 9/07/90 | 1024 | $ 1,500.00 |
| 9/14/90 | 1032 | $ 1,500.00 |
| 9/22/90 | 1046 | $ 1,500.00 |
| SUBTOTAL | | $ 7,500.00 |

para. 105 (1991). Finally, Count V alleged that the transfers from Gerardo Leasing to Vito Gerardo at issue in Count III also constitute preferential transfers made within one year of bankruptcy and should thus be avoided pursuant to § 547(b) of the Bankruptcy Code.

On December 10, 1993, Defendant Vito Gerardo responded to the Trustee's First Amended Complaint by filing his Motion to Dismiss Counts III, IV, and V of the Trustee's First Amended Adversary Complaint ("Motion to Dismiss"). Defendant Gerardo asserted that the three additional counts are subject to dismissal because the claims therein were not filed within two years of the Trustee's appointment in the Gerardo Leasing Case as required by the statute of limitations in the Bankruptcy Code under 11 U.S.C. § 546(a).

### Second Amended Complaint

The Trustee subsequently sought and was granted leave to file his Second Amended Adversary Complaint on February 9, 1994. Therein the Trustee maintained the five pending counts and supplemented Counts III, IV, and V by pleading more matters relating to the relationship between the three Debtor entities. In oral response by defendant's counsel, as noted by minute order dated February 16, 1994, Defendant Gerardo elected to stand on his original Motion to Dismiss Counts III, IV, and V against the Second Amended Complaint.

### Joint Pretrial Statement

On March 4, 1994, the parties filed their Joint Pretrial Statement in preparation for a hearing on the merits of Counts I and II. In response to Count I, Vito Gerardo admitted he received the $22,500.00 in alleged transfers from Debtor Gerardo & Sons, but asserted that the transfers were in fact compensatory payments for services rendered to and on behalf of Gerardo & Sons. Defendant Gerardo claimed to have engaged in continuous and ongoing discussions and negotiations to obtain a line of credit and additional financing on behalf of Gerardo & Sons.

The Trustee announced at that time that he did not intend to proceed on Count II, but no formal step has yet been taken to dismiss that count.

### Amendment to Second Amended Complaint

Finally, on May 6, 1994, the Trustee sought and was granted leave to file an amendment to the Second Amended Adversary Complaint. The Trustee therein pleaded the facts and circumstances surrounding the July 26, 1993, discovery of the Debtors' "missing" business and financial records. In the alternative, he further pleaded that, even if the Trustee is found to be barred from raising the Gerardo Leasing claims by the two year statute of limitations in § 546(a), he should still be allowed to proceed on those claims under the doctrine of equitable tolling. Defendant's Motion to Dismiss stands against the Second Amended Complaint as thereby amended.

### Jurisdiction

This matter is before the Court pursuant to 28 U.S.C. § 157, and is referred here under Local General Rule 2.33(A) of the District Court. The Court has subject matter jurisdiction per 28 U.S.C. § 1334. This matter constitutes a core proceeding per 28 U.S.C. § 157(b)(2)(H).

### Standards for Motion to Dismiss

■ A party may properly raise a statute of limitations defense in either a responsive pleading or, as here, in a motion to dismiss. *In re Luria Steel and Trading Corporation*, 168 B.R. 913, 914 (Bankr.N.D.Ill.1994) (Coar, J.) (relying on *Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 n. 1 (9th Cir. 1987)).

■ The court should dismiss a complaint for failure to state a claim only if it appears beyond a doubt from the pleadings that the plaintiff can prove no set of facts which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Gorski v. Troy*, 929 F.2d 1183, 1186 (7th Cir.1991). The issue is not whether the plaintiff can ultimately prevail, but whether a cause of action has been pleaded sufficient to entitle that party to

offer evidence in support of the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Perkins & Gaynor v. Silverstein,* 939 F.2d 463, 466 (7th Cir.1991).

■ When reviewing a motion to dismiss, the Court must take all well-pleaded facts alleged in the pleadings as true and must· also construe the pleadings and all reasonable inferences which derive therefrom in a light most favorable to the non-moving party. *Gorski,* 929 F.2d at 1186; *Prince v. Rescorp Realty,* 940 F.2d 1104, 1106 (7th Cir.1991).

### DISCUSSION

**A. *Applicability of § 546(a) to Counts III, IV, & V***

■ Defendant Gerardo maintains that Counts III, IV, and V of the Trustee's Second Amended Adversary Complaint should be dismissed as filed in violation of the two-year statute of limitations found in 11 U.S.C. § 546(a). Section 546 of the Bankruptcy Code provides that:

(a) An action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302 or 1202 of this title ...

11 U.S.C. § 546.

Count III of the Trustee's Second Amended Complaint as amended seeks to avoid transfers totalling $31,500.00 as alleged fraudulent conveyances from Gerardo Leasing to Vito Gerardo, pursuant to § 548(a) of the Bankruptcy Code. Count IV seeks further to avoid a $1,500.00 transfer alleged to be fraudulent pursuant to Ill.Rev.Stats., ch. 59, para. 105 (1991). Finally, Count V alleges that the $31,500.00 in total transfers pleaded in Count III also constitute preferential transfers, pursuant to § 547(b) of the Bankruptcy Code.

The plain text of § 546(a) makes it clear that Counts III and V, pleading avoidance actions under §§ 548 and 547 respectively, should have been filed within two years of the Trustee's appointment in the Gerardo Leasing case. The Trustee argues, however, that § 546(a) is not applicable to the claim alleged in Count IV. Rather, he asserts that dismissal of that claim would be "particularly inappropriate," given that the claim is a state-based claim brought pursuant to the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5, which has its own four year statute of limitations. 740 ILCS 160/10 (1993). Moreover, the Trustee argues that all of payments at issue could merely be repleaded or altered under that Illinois law so that their defeat on § 546(a) grounds would be "futile."

■ To hold as such, however, would be to ignore the express statutory basis for trustees pursuing here his avoidance actions under applicable state law. As this Court has previously held (under the predecessor statute to that on which Count IV is based), an action to avoid a fraudulent conveyance necessarily involves an assertion of the trustee's rights as enumerated in § 544(b) of the Bankruptcy Code. *See In re Martin,* 142 B.R. 260, 265–66 (Bankr.N.D.Ill.1992) (Schmetterer, J.). Adopting the logic of the Court in *In re Mahoney, Trocki & Assoc. Inc.,* 111 B.R. 914 (Bankr.S.D.Cal.1990), this Court reasoned in *Martin* that, although an action under § 544(b) is based on state law, it is still created by the Bankruptcy Code and is not available to a trustee or debtor outside of bankruptcy. *In re Martin,* 142 B.R. at 265–66. *See also In re Lyons,* 130 B.R. 272, 279 (Bankr.N.D.Ill.1991) (Squires, J.). Voiding actions brought under § 544(b), such as that in Count IV, are therefore more appropriately subject to the specific federal statutes of limitations set forth in § 546(a). *Id.* Based on that reasoning, the Trustee's argument that he could simply replead the claims contained in Counts III and V and effectively circumvent § 546(a) is also without merit.

**B. *Appointment of Trustee and Effect of Substantive Consolidation on § 546(a) Determination***

■ As a second related issue, this Court must determine the effective date on which the § 546(a) two-year statute of limitations period began to run. Ordinarily, the two-year limitation period governing a trustee's avoiding claims begins on the effective

date of a trustee's appointment. 11 U.S.C. § 546(a). Where, however, a petition is first filed under Chapter 11 and is later converted to a case under Chapter 7, the "date of appointment" is somewhat more difficult to ascertain. *See, e.g., In re Luria Steel and Trading Corp.*, 164 B.R. 293 (Bankr.N.D.Ill. 1994) (Coar, J.) (holding that two-year limitations period expired two years after initial appointment of Chapter 11 trustee and did not begin to run anew with appointment of Chapter 7 trustee); *Cf. In re SSS Enters., Inc.*, 145 B.R. 915 (Bankr.N.D.Ill.1992) (Ginsberg, J.) (concluding that Chapter 7 trustees should be given a fresh limitations period to recover property of the estate). When a debtor-in-possession was formerly charged with administration in a Chapter 11 proceeding, the better reasoned view is that the two-year limitation period begins to run on the date the Chapter 7 trustee is appointed. *See In re Pullman Construction Industries*, 132 B.R. 359 (Bankr.N.D.Ill.1991) (Schmetterer, J.) (Chapter 11 debtors-in-possession are not subject to the two-year limitations period applicable to actions brought by trustees); *In re Nelson Co.*, 167 B.R. 1018, 1023 (Bankr. E.D.Penn.1994); *In re Denver/Robins Venture Partners, Ltd.*, 166 B.R. 769, 771–75 (Bankr.M.D.Ga.1994). Trustee Brandt therefore was effectively "appointed" in each separate bankruptcy proceeding on the date upon which each individual case was converted: May 20, 1991 for Gerardo Leasing; August 2, 1991 for Gerardo & Sons; and November 27, 1991 for Getco.

Does substantive consolidation of the proceedings change the computation of time under § 546(a)? The Trustee implies that substantive consolidation somehow manipulates the date of "appointment of a trustee."

This issue seems to be one of first impression. By analogy, the closest authorities involve determinations as to whether orders granting substantive consolidation should be given *nunc pro tunc* effect for preference period determinations. Where this issue arises, there is usually a dispute over the proper reference date from which to determine whether alleged voidable preferences occurred within 90 days (or one year) of bankruptcy under 11 U.S.C. § 547(b). *See,*

*e.g., In re Auto–Train Corp.*, 810 F.2d 270 (D.C.Cir.1987); *In re Mars Stores, Inc.*, 150 B.R. 869 (Bankr.D.Mass.1993); *In re Tureaud*, 59 B.R. 973, 977 (Bankr.N.D.Okl. 1986); *In re Amereco Environmental Servs., Inc.*, 125 B.R. 566 (Bankr.W.D.Mo.1991); *Matter of Evans Temple Church of God in Christ*, 55 B.R. 976 (Bankr.N.D.Ohio 1986); and *In re Baker & Getty Fin. Servs., Inc.*, 98 B.R. 300 (Bankr.N.D.Ohio 1989).

This line of precedence is clearly distinguishable, however, from the case here. Those cases typically involved trustees or creditors attempting to expand the breadth of their voiding powers by looking to transactions that occurred further and further back in time. So-called *nunc pro tunc* determinations substantively entail (1) identifying a benefit to the estate to be derived from such retroactive application, and (2) ensuring that creditors will not be harmed by shifting filing dates when those creditors previously relied on an individual debtor's separate credit-worthiness. Conversely, in a statute of limitations determination, the court must apply rules designed to protect parties from having to defend against stale claims. *See Luria Steel and Trading Corp.*, 164 B.R. at 296. Ignoring the two-year limitations period would benefit the estate in that the trustee would have a longer period to discover potentially recoverable transfers made by the estate. Congress has determined, however, that two years is long enough for creditors or transferees to remain exposed to lingering impending claims. Any benefit to inure to the estate from voiding old fraudulent or preferential transfers is therefore subordinated to the protection of transferees' rights.

It appears, therefore, that there is no authority or rationale supporting a suggestion that the start date for the statute of limitations applicable to the Trustee's pending avoiding actions is somehow effected by a subsequent order for substantive consolidation.

Looking to the plain language of § 546(a)(1), the period begins to run on the date the trustee is "appointed" under §§ 702, 1104, 1163, 1302, or 1202. Here, William Brandt was separately appointed under § 702 in each individual case on the three

dates previously stated. To hold that Brandt was constructively "appointed" on October 7, 1993, the day consolidation was ordered, would be to disregard the specific wording of § 546(a).

## C. Fed.R.Civ.P. 15(c)—The Relation Back Doctrine

■ Although § 546(a) is applicable to the pending claims, the Trustee argues that Counts III, IV, and V of his amended Complaint should "relate back" through Fed. R.Bankr.P. 7015 (Fed.R.Civ.P. 15(c)) to the conduct and transactions alleged in Count I of the Trustee's Original Adversary Complaint.

The matter is well settled that leave to amend a complaint should be "freely given." Fed.R.Civ.P. 15(a). As explained by the Supreme Court in *Foman v. Davis,* 371 U.S. 178, 192, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962):

> "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason ... the leave [to amend] should, as the rules require, be 'freely given.'"

*See also Matter of Stavriotis,* 977 F.2d 1202, 1206 (7th Cir.1992) (The purpose of liberally permitting amendments to pleadings is to "enable a party to assert matters that were overlooked or were unknown to him at the time he interposed his original complaint or answer."); *Hill v. Shelander,* 924 F.2d 1370, 1376 (7th Cir.1991); *Eades v. Thompson,* 823 F.2d 1055, 1062–63 (7th Cir.1987); *Staren v. American Nat. Bank & Trust Co.,* 529 F.2d 1257, 1263 (7th Cir.1976) ("[I]t is well settled that the Federal Rules of Civil Procedure are to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits. To this end, amendments pursuant to Rule 15(c) should be freely allowed.").

However, not all amended complaints are permitted to relate back to the time the plaintiff filed its original complaint. Rather, under Fed.R.Bankr.P. 7015, incorporating by reference Fed.R.Civ.P. 15(c),

(c) [a]n amendment of a pleading relates back to the date of the original pleading when ...

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleadings, ....

Fed.R.Civ.P. 15(c).

■ The most important factor in determining whether to allow an amended complaint to relate back to the date of the original filing is whether the original complaint provided the defendant with sufficient notice of what must be defended against in the amended pleading. *In re Barnes,* 96 B.R. 833, 836 (Bankr.N.D.Ill.1989) (Schmetterer, J.) ("Notice to the opponent is clearly the critical element in the Rule 15(c) determination."); *In re Gaslight Club, Inc.,* 167 B.R. 507, 517 (Bankr.N.D.Ill.1994). There is no requirement, however, that the same substantive legal theory be advanced in both complaints. *Id.,* (relying on *Donnelly v. Yellow Freight Sys., Inc.,* 874 F.2d 402, 410 (7th Cir.1989), *aff'd in part,* 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990)). Rather, the amended complaint should be deemed timely if a sufficient factual nexus exists between the original and amended complaints such that the original pleading gives fair notice of the factual situation from which the amended pleading arises. *Grattan v. Burnett,* 710 F.2d 160, 163 (4th Cir.1983), *aff'd,* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984).

■ The test under Rule 15(c) of whether a sufficient factual nexus exists to permit relation back is whether "the evidence with respect to the second set of allegations could have been introduced under the original complaint, liberally construed." *In re Kruszynski,* 150 B.R. 209, 212 (Bankr. N.D.Ill.1993) (quoting *Barnes,* 96 B.R. at 836 (relying on *Gelling v. Dean,* 11 B.R. 542, 545 (9th Cir. BAP 1981))). If the new counts have the same factual basis as the original count, then the amendments arise "out of the same transaction" as the original pleading

and thus relate back under Rule 15(c). *In re Kruszynski*, 150 B.R. at 211; *see F.D.I.C. v. Knostman*, 966 F.2d 1133, 1138–39 (7th Cir. 1992); *Johnson v. Artim Trans. Sys., Inc.*, 826 F.2d 538, 547 n. 9 (7th Cir.1987), *cert. denied*, 486 U.S. 1023, 108 S.Ct. 1998, 100 L.Ed.2d 229 (1988). It has thus been well established that an amended complaint will relate back, notwithstanding the bar of the statute of limitations, if it merely adds a new legal ground for relief, changes only the date and location of the transaction originally alleged, spells out the details of the transaction originally alleged, or even increases the *ad damnum* clause of the original complaint. *See In re Kam Kuo Seafood Corp.*, 67 B.R. 304, 305–06 (Bankr.S.D.N.Y.1986) (relying on 6 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1497 at 493–494 (1971)).

■ If, however, an amendment states a new claim based on a materially different set of facts than the original claim, the amendment does not relate back. *In re Kruszynski*, 150 B.R. at 212; *see also Forzley v. AVCO Corp.*, 826 F.2d 974, 981 (11th Cir.1987); *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir.1985); *In re Srour*, 138 B.R. 413, 418 (Bankr.S.D.N.Y. 1992). Courts need take care that a party not be allowed to use the relation back doctrine solely to "bootstrap" time-barred claims onto viable actions where the claims are not based on the same factual allegations. *Gaslight Club, Inc.*, 167 B.R. at 516 (relying on *Matter of Stavriotis*, 977 F.2d 1202, 1206 n. 4 (7th Cir.1992)).

■ Considerable difficulty arises when court are confronted with an original complaint which pleads a transaction or series of transactions and amendments which seek only to add transactions similar to those already pleaded. In *In re Metzeler*, 66 B.R. 977 (Bankr.S.D.N.Y.1986), the court held that such transactions should be permitted to relate back to the time of filing of the original complaint. As enunciated in *Kam Kuo Seafood Corp.*, 67 B.R. at 304, preferential or fraudulent transfer claims concerning an additional transaction should relate back if the newly pleaded transaction is not materially different in kind from that originally alleged and if the original pleading put into issue

conduct to which the additional transactions relate. *See In re Metzeler*, 66 B.R. at 983; *In re Tabacalera Cubana*, 379 F.Supp. 772 (S.D.N.Y.1974) (holding that additional accounts receivable and invoices may be added to an action for goods sold and delivered and may relate back to the filing of the original complaint because the transactions were similar, arose from the same course of dealings, and concerned the same evidence).

■ Of course, amended claims should not be presumed to relate back merely because the additional transactions bear the same label as "preferential" or "fraudulent." *See Dworsky v. Alanjay Bias Binding Corp.*, 182 F.2d 803, 805–06 (2d Cir.1950) ("Courts have consistently treated preferential transactions as separate and distinct under Rule 15(c).") Rule 15(c)'s requirement that the matter sought to be added arise "out of the conduct, transaction, or occurrence" previously pleaded contemplates as much. Similar conduct with respect to an additional transaction is not expressly included. *See In re Metzeler*, 66 B.R. at 984. Where, however, additional evidence is presented that the additional transaction did in fact arise out of the conduct previously pleaded, amended claims should be held to relate back pursuant to Rule 15(c)(2).

In support of his Motion to Dismiss, Defendant Gerardo argues essentially that Counts III, IV, and V should not relate back to the original filing date because the claims pleaded at that time involved transfers made by different debtors, through different accounts, and at different times. He also objects that those claims involved different legal theories such that the amended claims could not have arisen from the same conduct, transaction, or occurrence pleaded in the first complaint. He argues further that the fact that both original and amended pleadings bear the same label as "fraudulent" or "preferential" does not allow relation back on the ground that they arise from similar conduct. *See In re Metzeler*, 66 B.R. at 984. As Defendant points out, courts have consistently treated preferential transactions as separate and distinct under Rule 15(c), and the same should be true of separate fraudulent transfers. *Id.* Finally, Defendant asserts

that notice to Defendant of the conduct to be defended against, which this Court in *In re Barnes* found to be the critical element in a Rule 15(c) determination, is "clearly lacking."

In response, the Trustee maintains that the payments at issue in Count I of the original Adversary Complaint and Counts III, IV, and V of the amended Complaints are part of the same course of conduct and scheme. Count I of the original Adversary Complaint sought to recover $22,500.00 in transfers from Debtor Gerardo & Sons to Vito Gerardo as alleged violations of Illinois' fraudulent conveyance statute, Ill.Rev.Stats., ch. 59, para. 105 (1991). The transfers were asserted to be a series of fifteen $1,500.00 checks, drawn weekly on an account of Debtor Gerardo & Sons, for a period of just over three months. Counts III, IV, and V of the Trustee's First Amended Complaint sought recovery of alleged fraudulent and preferential payments totalling $33,000.00 to Vito Gerardo from accounts of Debtor Gerardo Leasing. Again, as with the claims pleaded in the original Complaint, these contested transfers were in fact a series of weekly $1,500.00 checks paid to Vito Gerardo over a 21–week period, drawn on two separate accounts held in the name of Gerardo Leasing. The Trustee argues accordingly that the additional claims asserted in amended Counts III, IV, and V pertain to additional transactions arising out of the same conduct, transactions and occurrences as those alleged initially in the original complaint, and thus should relate back under Rule 15(c).

Were the additional payments at issue in the amended pleadings simply a part of the common scheme or pattern of fraudulent conduct alleged in the original Complaint? Certainly, timing of the payments suggests that the additional transfers from Gerardo Leasing may have been part of an ongoing series of periodic payments from the Debtors to Vito Gerardo. As earlier described, Debtor Gerardo & Sons allegedly began making regular, systematic $1,500.00 transfers to Defendant Vito Gerardo on a weekly basis in late December 1989. Gerardo & Sons continued to make these payments through the last check tendered on that account on April 7, 1990. Immediately thereafter, on April 13, 1990, Debtor Gerardo Leasing allegedly began making regular payments to Vito Gerardo in the same amount—$1,500.00—and with the same frequency—once a week—as Gerardo & Sons had done for the preceding fifteen weeks. Gerardo Leasing allegedly continued to make these regular payments, in precisely the same manner Gerardo & Sons had done for twenty-two more weeks.

Facially, these two streams of payments may be part of a single pattern of conduct. There is at least a strong possibility that the start and end dates of the two payment streams at issue coincide for reasons beyond mere coincidence. Payments by Gerardo Leasing may therefore be found at trial to be an example of the Debtors' intermingled financial activities. With respect to the first series of payments from Gerardo & Sons, Defendant Gerardo has pleaded as a defense that the transfers were in fact agreed upon compensatory payments for services the Defendant had provided to and on behalf of Debtor Gerardo & Sons. Although the Defendant has not yet pleaded as such with respect to the amended additional transfers, it is at least possible that Defendant Gerardo will plead the same defense with respect to payments received from Gerardo Leasing. Of course, whether or not such entitlement for compensation can be shown must be determined following trial. However, at this stage all reasonable inferences derived from the pleadings must be construed in favor of the Trustee, *Gorski*, 929 F.2d at 1186; *Prince*, 940 F.2d at 1106. In doing so, it appears that a state of facts may be proved at trial to show that the payment streams now pleaded arose from the same conduct, transactions, or occurrences.

■ Defendant Gerardo also argues that the fact that payments were made by two separate debtors and from two separate accounts should prevent this Court from holding that the amended claims relate back to the original pleadings. However, by Order dated October 7, 1993, the three related Debtors were substantively consolidated pursuant to 11 U.S.C. § 105(a). Gerardo Leasing and Gerardo & Sons should accordingly be treated as a single entity for the remainder of the proceedings. *See Federal Deposit*

*Insurance Corp. v. Colonial Realty Co.,* 966 F.2d 57, 58 (2d Cir.1992). No motion has since been made to re-examine that determination. The Trustee asserts that the three Debtors were in fact a single, controlled group of corporations, owned, operated, and managed as if a single entity, since well before the outset of the related bankruptcy proceedings. Indeed, he contends that the three Debtors were managed by the same President, maintained the same business premises, and had "identical ownership structures." He claims to have evidence, moreover, to suggest that the Debtors' financial affairs were inextricably intertwined and that the Debtors' assets and liabilities were commingled to a significant extent. Again construing the pleadings and inferences derived therefrom in a light most favorable to the Trustee, it may be that evidence will prove these contentions and require a holding that payments from the accounts of Gerardo Leasing can be treated constructively as payments from the accounts of Gerardo & Sons for purposes of relation back under Rule 15(c).

The pleadings here indicate that the original and amended claims share far more than a mere common "fraudulent" or "preferential" label. *Cf. In re Metzeler,* 66 B.R. at 984. The timing between the end of the payments by Gerardo & Sons and the start of payments by Gerardo Leasing, coupled with the similarity in amount and frequency in payment; the possibility that these payments were made pursuant to an alleged service agreement; and the possibility that the various Debtors' finances were intermingled, may well lead to a finding following trial that the additional payments were in fact part of one ongoing series of transfers. Thus, it appears that the evidence pertaining to the second set of claims could have been introduced under the original complaint, liberally construed. *See Kruszynski,* 150 B.R. at 212.

■ Finally, Defendant would have this Court view as dispositive the distinction between legal theories raised under the original and amended claims. Those differences are not necessarily dispositive here, however, because the amended claims raise the same or similar legal theories as that plead in the first instance. Count I raises a fraudulent conveyance claim pursuant to Ill.Rev.Stats., ch. 59, para. 105; the amended claims raise fraudulent and preferential claims pursuant to Ill.Rev.Stats., ch. 59, para. 105, § 548(a), and § 547(b) of the Bankruptcy Code. The three amended claims are related voiding actions, and all rely on essentially the same mix of facts as pleaded originally.

■ Even if the legal theories were viewed as materially different, "there is no requirement that the same substantive legal theory be advanced in both complaints." *Gaslight Club, Inc.,* 167 B.R. at 517. Rather, the amended complaint should be deemed to relate back where it arises out of the same conduct, transaction, or occurrence as the original action. *Id.,* (relying on *Yellow Freight System, Inc.,* 874 F.2d at 410). As this Court has held previously, "[w]hen the same transaction gives rise to both the claim in the original pleadings and the claim asserted in the amendment, then the defendant has received fair notice that he is being sued for his conduct in that transaction." *Kruszynski,* 150 B.R. at 211. In the instant case, the Trustee has pleaded a set of facts that, if proven true, might demonstrate a common series of transaction giving rise to both the original and amended claims. Construing the facts as presented in a light most favorable to the non-moving party, any distinction between the legal theories presented is not presently dispositive.

As pleaded, Count I and Counts III, IV, and V concern the same transferee, may well concern in effect the same transferor, and involve an ongoing series of facially identical payments and the same or similar legal theories of recovery. While care must be taken to avoid permitting claimants to "bootstrap" claims onto timely filed pleadings to avoid statutes of limitations, *see Gaslight Club,* 167 B.R. at 516, the claims alleged here may very well be based on the same factual allegations in the original complaint. In light of this possibility, and viewing the pleadings and all reasonable inferences therein in the light most favorable to the Trustee, evidence at trial may demonstrate that amended Counts III, IV, and V relate back to the timely filing

of Count I of the Trustee's Original Adversary Complaint.

### D. *Equitable Tolling*

A statute of limitations may be tolled by the inequitable conduct of one or more parties. *In re Papa's Market Cafe, Inc.,* 162 B.R. 519, 524 (Bankr.N.D.Ill.1993) (Coar, J.). This equitable tolling doctrine must be read into every federal statute of limitations, *Holmberg v. Armbrecht,* 327 U.S. 392, 297, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1945), and indeed every court to have considered such to date has held that the equitable tolling doctrine applies to § 546(a). *In re United Ins. Mgt., Inc.,* 14 F.3d 1380, 1384 (9th Cir.1994) (setting forth exhaustive list of recent cases).

The Seventh Circuit has held that the equitable tolling doctrine tolls the running of a statute of limitations in response to two types of fraudulent behavior. First, the statute may be tolled "where the fraud goes undiscovered even though the defendant does nothing to conceal it." *Suslick v. Rothschild Sec. Corp.,* 741 F.2d 1000, 1004 (7th Cir.1984). Where such is the case, the plaintiff has the burden of proving due diligence and the exercise of reasonable care. *Morgan v. Koch,* 419 F.2d 993, 997 (7th Cir.1969). *See In re Lyons,* 130 B.R. 272, 280 (Bankr.N.D.Ill.1991) (Squires, J.). Second, the statute of limitations may be tolled where the fraud remained undisclosed because the defendant took additional affirmative steps after committing the fraud to keep it concealed. *Lyons,* 130 B.R. at 280–81 (relying on *Suslick,* 741 F.2d at 1004). The plaintiff must, however, present evidence under this second theory that the defendant's conduct in fact prevented the claim from being timely filed. *Papa's Market Cafe,* 162 B.R. at 524.

Viewing inferences in the pleadings at this stage most favorably to the plaintiff, there may well have been exigencies tolling expiration of the two-year statute of limitations period. The Trustee has alleged, and may very well be able to prove at trial, that he exercised reasonable care in attempting to ascertain the Debtors' financial affairs. It appears possible that the Trustee could not have discovered the fraudulent transfers but for belated discovery of the 150 boxes of "missing" records in the abandoned semi-trailer. Such evidence might well be found to toll the two-year limitations period under the first test.

Furthermore, again deriving all reasonable inferences from the pleadings in favor of the Trustee, it is implied that defendant may have played some role in concealing the missing records until their discovery on July 26, 1993. While there have been no explanations yet offered as to why the records were not discovered by Trustee at an earlier point, it is at least possible that evidence would show that Vito Gerardo played some role in impeding their discovery. If defendant actively concealed these records and the Trustee is able to prove such concealment, there might be a tolling of the two-year limitations period under the second equitable tolling test.

### CONCLUSION

For reasons stated herein, it is possible that evidence will show that Counts III, IV, and V of Trustee's Second Amended Complaint are part of the same transactions as those in the first Complaint, and thus relate back to the time of filing of the Trustee's original Adversary Complaint, under Fed. R.Bankr.P. 7015 (Fed.R.Civ.P. 15(c)). It is also possible that evidence may support the equitable tolling argument by plaintiff. Of course, it is also possible that evidence will not support either of these positions and that the questioned pleadings should be defeated on limitations grounds.

Accordingly, Defendant's Motion to Dismiss Counts III, IV and V of Trustee's Second Amended Complaint is denied, but without prejudice to renewal of these issues after trial. By separate order, defendant will now be required to plead to those counts, and the case will be set for trial.