**In re AUSTIN DRIVEWAY SERVICES, INC., Debtor.**

**Richard M. COAN, Trustee, Plaintiff,**

v.

**O & G INDUSTRIES, INC., Defendant.**

Bankruptcy No. 90–52173.
Adv. No. 93–5087.
Docket Id. No. 48.

United States Bankruptcy Court, D. Connecticut.

March 10, 1995.

Christopher M. Royston, Coan, Lewendon and Royston, New Haven, CT, for plaintiff.

Scott M. Schwartz, Blume, Elbaum & Collins, West Hartford, CT, for defendant.

## MEMORANDUM AND ORDER ON MOTION FOR LEAVE TO AMEND COMPLAINT

ALAN H.W. SHIFF, Bankruptcy Judge.

The plaintiff seeks leave to file an amended complaint to avoid an alleged preferential transfer which was not challenged in the original complaint. Because the proposed amendment challenges a distinct transaction, I conclude that it does not relate back to the filing of the original complaint and is therefore time barred by § 546(a)(1).

## BACKGROUND

This chapter 7 case was commenced by an involuntary petition filed by the defendant O & G Industries, Inc. on November 2, 1990. An order for relief entered on February 5, 1991. The plaintiff was appointed interim trustee on March 18, 1991 and became permanent trustee on April 18, 1991. *See* § 702(d). On April 13, 1993, the plaintiff commenced this action against the defendant (the "Original Complaint"). Paragraph 4 of the Original Complaint alleged that the "debtor, within 90 days of the filing for bankruptcy, paid to the defendant $79,237.03 on account of an antecedent debt." On May 11, 1993, the defendant filed a motion for a more definite statement, seeking an order requiring, *inter alia*, that the plaintiff amend the complaint to allege the specific amount, date, and method of payment of each alleged transfer, so as to specify "sufficient detail concerning the alleged preferences as to al-

low the Defendant to appropriately respond to each such transfer." That motion was granted and on July 7, 1993, the plaintiff filed an amended complaint (the "First Amended Complaint") which specified, in six counts, six separate transactions allegedly occurring between August 3, 1990 and September 25, 1990, with the aggregate amount of the transfers equalling $79,237.03. On August 9, 1993, the defendant filed an answer with affirmative defenses. Count Six of the First Amended Complaint states:

> The debtor, on or about August 22, 1990, paid to the defendant $28,609.87, by directing B.J. Dolan Company to draw a check directly to [the defendant] in the amount of $28,609.87 from funds owing to the debtor by B.J. Dolan Company.

On August 11, 1993, the plaintiff filed a motion for leave to file a second amended complaint (the "Second Amended Complaint") to include certain allegations contained in the Original Complaint but inadvertently omitted from the First Amended Complaint. That motion was granted without objection on September 28, 1993. The Second Amended Complaint described the same six alleged transfers as were described in the First Amended Complaint.

The plaintiff alleges that the defendant's responses to production requests and interrogatories disclosed (i) the $28,609.87 payment described in Count Six of the Second Amended Complaint was made by The Hawley Construction Co., Inc., rather than by the B.J. Dolan Company; (ii) the defendant had received another transfer from Carl Lecher, Inc., in the amount of $14,264.90 on account of money owed to the defendant by the debtor; and (iii) the defendant had complete defenses to four of the six transfers alleged in the Second Amended Complaint. Accordingly, on December 27, 1993, the plaintiff filed the instant motion seeking leave to file a Third Amended Complaint in three counts. Count One would describe a transfer which was described in the Second Amended Complaint. The material allegations of Counts Two and Three are as follows:

> Count Two: On or about August 21, 1990, the defendant received $28,609.87 from The Hawley Construction Co., Inc., from

monies owing from The Hawley Construction Co., Inc. to Austin Driveway Services, Inc. on account of an antecedent debt from the debtor to the defendant.

Count Three: On or about September 25, 1990, the defendant received payment from Carl Lecher, Inc. in the amount of $14,264.90, from funds owing to Austin Driveway Services, Inc. by Carl Lecher, Inc. on account of an antecedent debt of the debtor to the defendant.

The defendant does not dispute that the Second Amended Complaint may be amended to delete the four transactions as to which the defendant has complete defenses, and to include Count Two substituting The Hawley Construction Co., Inc., for the B.J. Dolan Company. The defendant objects to the inclusion of proposed Count Three of the Third Amended Complaint, on the ground that it asserts a new claim not arising out of the "conduct, transaction, or occurrence set forth or attempted to be set forth" in the Original Complaint, and that that count is therefore barred by the statute of limitations contained in § 546(a). *See* Rule 15(c)(2) Fed.R.Civ.P., *infra*. It is undisputed that the statute of limitations expired no later than April 19, 1993, or six days after the Original Complaint was filed. *See* Stipulation of Facts for Trustee's Motion for Leave to Amend Complaint, filed April 4, 1994, at ¶ 3.[1]

### DISCUSSION

The issue raised here is whether the proposed claim dates back to the Original Complaint. Rule 15(c) Fed.R.Civ.P., made applicable by Rule 7015 Fed.R.Bankr.P., provides in relevant part:

> An amendment of a pleading relates back to the date of the original pleading when
>
> . . .
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. . . .

The plaintiff argues that the concept of relation back should be liberally applied in preference actions to foster the bankruptcy goal of maximizing the recovery for unsecured creditors. That policy can be achieved by defining "conduct, transaction, or occurrence" broadly to include "the relationship between the debtor and creditor during a prescribed period of time," i.e., the applicable preference period, so that all transfers occurring during that period are linked. *See* Memorandum of Law in Support of Trustee's Motion for Leave to Amend Complaint, filed March 21, 1994, at p. 4. The defendant, on the other hand, argues that the limitation period for trustee actions under § 546(a), like other time bars, is designed to afford potential defendants with some certainty that they will not be called upon to defend stale claims. This decision addresses the tension between those competing concepts.

My primary task, then, is to define, as a matter of law, the parameters of the "conduct, transaction, or occurrence" referred to by Rule 15(c)(2) in the preference context. It must then be determined whether, as a matter of fact, the new claim which the plaintiff would assert conforms to those parameters.[2]

1. April 18, 1993 was two years after the plaintiff became the permanent trustee, but that date was a Sunday. *See* Rule 9006(a) Fed.R.Bankr.P. The amendment to § 546(a) by Section 216 of the Bankruptcy Reform Act of 1994, which provides for a limitation period ending on the later of two years after entry of the order for relief or one year after appointment or election of the trustee, does not apply in this case which was commenced prior to that Act's October 22, 1994 effective date. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, §§ 216, 702(b), 108 Stat. 4106, 4126–27, 4150–51 (1994).

2. That factual determination requires the application of the standard for a motion to dismiss because an amendment need not be allowed if the new claim would not survive a motion to dismiss. *McNally v. Yarnall*, 764 F.Supp. 853, 855 (S.D.N.Y.1991) ("An amendment is considered futile if the amended pleading fails to state a claim or would be subject to a motion to dismiss on some other basis."); *see Moffitt v. Town of Brookfield*, 759 F.Supp. 94, 95 (D.Conn.1991). The motion to dismiss standard requires the court to "accept the material facts alleged in the complaint as true"; "not to dismiss 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,'" *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)) (some citations omitted), *cert. denied*, 504 U.S. 911, 112 S.Ct.

## 1. Relation Back Under The Federal Rules

██ Rule 15(c) is "to be liberally .construed, particularly where an amendment does not 'allege a new cause of action but merely ... make[s] defective allegations more definite and precise.'" *Siegel v. Converters Transp., Inc.,* 714 F.2d 213, 216 (2d Cir.1983) (per curiam) (quoting *Glint Factors, Inc. v. Schnapp,* 126 F.2d 207, 209 (2d Cir.1942)). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 150 n. 3, 104 S.Ct. 1723, 1725, n. 3, 80 L.Ed.2d 196 (1984) (per curiam). Thus, the relation back analysis focuses on the notice given by the general fact situation stated in the original pleading. *Rosenberg v. Martin,* 478 F.2d 520, 526 (2d Cir.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *see Brandt v. Gerardo (In re Gerardo Leasing, Inc.),* 173 B.R. 379, 388 (Bankr.N.D.Ill. 1994) ("The most important factor in determining whether to allow an amended complaint to relate back to the date of the original filing is whether the original complaint provided the defendant with sufficient notice of what must be defended against in the amended pleading."). Put another way, a new cause of action otherwise barred by the statute of limitations may be asserted by an amendment that relies upon the same facts because the defendant is on notice that specific conduct, transactions, or occurrences allegedly support a claim against it so that relevant evidence should be preserved.

██ Generally, an amended complaint will relate back if it "merely adds a new legal ground for relief, changes the date and location of the transaction alleged, ... spells out the details of the transaction originally alleged, ... [or] merely increas[es] the *ad damnum* clause...." *Pereira v. Hong Kong & Shanghai Banking Corp. (In re Kam Kuo Seafood Corp.),* 67 B.R. 304, 306 (Bankr.

S.D.N.Y.1986) (citations omitted). None of those amendments affects the quality of the notice given by the general fact situation alleged in the original pleading. For example, in *Travelers Ins. Co. v. 633 Third Assocs.,* 14 F.3d 114 (2d Cir.1994), the court held that where the original complaint alleged that the defendant partnership's cash distribution should be avoided as a fraudulent transfer, a new claim challenging that same distribution on a different legal theory would relate back to the original complaint. *Accord Fiber–Lite Corp. v. Molded Acoustical Prods., Inc. (In re Molded Acoustical Prods., Inc.),* 150 B.R. 608, 613 (E.D.Pa.1993) (where original complaint asserted that a particular transfer was void as a preference, amended complaint challenging the same transfer under § 549 would relate back to filing of original complaint), *aff'd,* 18 F.3d 217 (3d Cir.1994); *O'Neil v. Kelley Drye & Warren (In re Colonial Cheshire I Ltd. Partnership ),* 167 B.R. 748, 752 (Bankr.D.Conn. 1994) (where original complaint challenged prepetition transfer to law firm as transfer of estate assets, amendment changing the amount of the transfer and alleging that it was fraudulent related back). However, when the amended pleading does not rely upon the facts and transactions originally pled or plead them more specifically, but rather is based on new facts and different transactions, the proposed amendment will not relate back to the original pleading. *In re Chaus Sec. Litig.,* 801 F.Supp. 1257, 1264 (S.D.N.Y.1992). One test of the sufficiency of the factual nexus between the original and the proposed allegations is whether the evidence with respect to the amendment could have been introduced under the original complaint. *In re Gerardo Leasing, Inc., supra,* 173 B.R. at 388; *see Benfield v. Mocatta Metals Corp.,* 26 F.3d 19, 23 (2d Cir.1994) (for relation back there must be sufficient commonality between facts alleged in amended and original complaints to preclude a claim of unfair surprise).

1943, 118 L.Ed.2d 548 (1992); and to draw all inferences in the light most favorable to the plaintiff. *Urashka v. Griffin Hosp.,* 841 F.Supp. 468, 472 (D.Conn.1994). In applying the Rule 12(b)(6) standard, the court may consider "only

the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993).

### 2. Relation Back Where A Series Of Events Is Alleged

The contours of the "conduct, transaction, or occurrence set forth or attempted to be set forth" in the original pleading become much less distinct where that pleading describes a series of events as is the case here. Under those circumstances, an inquiry must be made as to whether the events are linked by some underlying conduct or transaction, so that the defendant may fairly be charged with notice that the plaintiff might amend his complaint to allege another event in the series after conducting discovery, or whether each event is truly an independent "transaction." Devising a coherent rule to govern the relation back of amendments to pleadings alleging sequential events requires the examination of a number of decisions which have addressed that factual situation.

In *Siegel v. Converters Transp., Inc.*, *supra*, 714 F.2d 213, a shareholder brought a derivative suit on behalf of a common carrier to recover so-called commissions charged by principals of the shipper on the ground that they were actually illegal rebates which permitted the shipper to undercut the carrier's filed tariffs. Some of the shipments giving rise to the liability occurred more than three years prior to the filing of an amended complaint and would have been barred under the applicable statute of limitations unless the amended complaint related back to the original. The Second Circuit held that the amended complaint related back:

> In this case the initial complaint made it clear that [the carrier] sought recovery for all unpaid shipping services it had rendered [to the shipper] and all the "commissions" paid to the various defendants. The "conduct" or "transaction" in question was therefore the agreement to violate the tariff filed with the ICC by means of "free" shipments and "commissions." To allow [the shipper] to interpose a statute of limitations defense on the theory that each shipment represented a separate "occurrence" for the purpose of Rule 15(c) would ignore the fact that the plaintiff was not required under the Rules to plead each shipment with specificity, and did not do so. Such an approach would also defeat

the rationale of Rule 15 which is ... "to ameliorate the effect of the statute of limitations." 6 C. Wright & A. Miller, Federal Practice and Procedure § 1497, at 495 (1971) (footnote omitted). Nor is there any possibility that [the shipper] was prejudiced here. Any reliance on the statute of limitations ... would have been wholly unjustified because a "suit warns the defendant to collect and preserve ... evidence in reference to it. When a suit is filed in a federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be." *Barthel v. Stamm*, 145 F.2d 487, 491 (5th Cir.1944), *cert. denied*, 324 U.S. 878, 65 S.Ct. 1026, 89 L.Ed. 1430 (1945). The gist of both the original suit and the amended complaint was the unlawful agreement to pay lower freight charges and commissions, and its continuing performance, not a series of agreements as to unrelated shipments.

*Id.* at 216 (some citations omitted).

In *Gomes v. Avco Corp.*, 964 F.2d 1330 (2d Cir.1992), an employee filed a complaint in 1989 seeking damages for his union's failure to file a grievance against his employer based on an alleged act of discrimination which occurred in 1985. In 1990 the employee amended the complaint to seek damages against the union on different theories for both the failure to file a grievance for the 1985 act of discrimination and the failure to file a grievance for a separate 1987 act of discrimination. The court found that the proposed claim for the 1987 occurrence did not relate back to the original complaint because each refusal to file a grievance was a separate act. *Id.* at 1334.

In *In re Chaus Sec. Litig.*, *supra*, 801 F.Supp. at 1264, the court held that allegations of accounts receivable manipulations in an amended complaint related back even though the events were distinct from those alleged in the original complaint, because they were part of the same basic scheme to defraud investors alleged in the original complaint. By contrast, the court in *Fed. Deposit Ins. Corp. v. Chizner*, 110 F.R.D. 114 (E.D.N.Y.1986), held that the plaintiff's amendment seeking to collect on promissory

notes did not relate back to the original complaint seeking to recover on different promissory notes even though all of the notes arose out of the same real estate venture. The venture "was not subsumed by one contract, in which a suit for failure to perform one part of the contract would have notified the defendant of the potential for suit upon liability for failure to have performed some other part of the contract." *Id.* at 118–19.

Each of the foregoing cases turns not on the relationship between the adverse parties, but rather on the existence or absence of an underlying common scheme or course of conduct which is the basis of the original action and links otherwise distinct transactions. In *Siegel,* for example, it was not the shipper-carrier relationship which linked the earlier shipments to those alleged in the complaint but rather the actionable agreement between the shipper and the shipper's principals which undercut the filed rates. Similarly, in *In re Chaus Sec. Litig.,* the common scheme to defraud provided the relation-back nexus, not the investor-broker relationship. In *Gomes* and *Chizner,* there was no underlying actionable scheme or course of conduct, so the transactions, although independently actionable, were not linked for Rule 15(c) purposes.

### 3. *Relation Back In The Preference Context*

By its very nature, a debtor-creditor relationship always exists in an action to avoid a preferential transfer. But obviously that relationship does not by itself provide the basis for a § 547 cause of action. Each transfer between the debtor and a potential preference defendant is an isolated event. The challenge to each transfer will succeed if each of the five subparts of § 547(b) is proven, and none of the eight[3] defenses in § 547(c) applies. While an underlying common scheme or course of conduct might link various transfers, the debtor-creditor relationship does not dictate such a result.

An examination of relevant case law confirms that relation back in preference actions, as distinct from fraudulent transfer

actions where the existence of an underlying common scheme to defraud is more likely to exist, is the exception rather than the rule. As the court in *Metzeler v. Bouchard Transp. Co., Inc. (In re Metzeler),* 66 B.R. 977, 983, 984 (Bankr.S.D.N.Y.1986), summarized:

> Courts have consistently treated preferential transactions as separate and distinct under Rule 15(c)…. [P]reference claims concerning an additional transaction do not relate back if the transaction is different in kind from that originally alleged and if the original pleading did not put into issue conduct to which the additional transactions relate…. Similar conduct with respect to a separate transaction is not expressly included [within Rule 15(c)].

In *Dworsky v. Alanjay Bias Binding Corp.,* 182 F.2d 803 (2d Cir.1950), the Second Circuit construed a Bankruptcy Act provision which made a preference given within four months prior to the petition an act of bankruptcy. The court held that where the original petition alleged that preferential transfers occurred on unknown dates to various creditors in an aggregate amount of $1,000, an amendment alleging specific transfers and providing dates, amounts, and transferees did not relate back to the original petition. The court held that the four-month limitations period

> recognizes the interest of the debtor in not being adjudged a bankrupt because of old transfers to creditors and that of the creditor-transferees in not having old transfers to them upset. Unless, therefore, some preference is timely alleged as an act of bankruptcy with sufficient descriptive detail to show that a particular transfer is charged, the allegation is so colorless that amendment becomes not an amplification but a replacement…. In determining whether an original allegation can be identified with a proposed amendment to make the latter relate back … we look only to the petition and proposed amendment to determine whether, when considered to-

---

**3.** The Bankruptcy Reform Act of 1994 added the eighth defense applicable in cases filed after its effective date. *See* Pub.L. No. 103–394, §§ 304(f), 702(b), 108 Stat. 4106, 4133–34, 4150–51 (1994).

gether, they disclose on their face that in the original petition the creditor set forth, or attempted to set forth, the same preferential transfer or transfers ultimately relied upon.

*Id.* at 805. *Cf. Glint Factors v. Schnapp*, 126 F.2d 207 (2d Cir.1942) (where original petition alleged preferential transfer of $2,300 to debtor's relatives, amendment changing amount to $2,250 and naming the relatives related back).

In *In re Kam Kuo Seafood Corp., supra*, 67 B.R. 304, the trustee's complaint alleged that a $150,000 cashier's check given to the defendant was a preference. After expiration of the statute of limitations, the trustee sought to amend the complaint to allege seven additional transactions aggregating $161,-535.68. The court held that the amended complaint would not relate back to the original complaint. Distinguishing *Siegel v. Converters Transp., Inc., supra*, 714 F.2d 213, as a case in which the "original complaint indicate[d] an intention to pursue all transactions," the court found that it was

> not at all clear that the defendant knew or should have known ... that the litigation would involve all payments during the 90 day preference period pleaded in the complaint from the plaintiff's pleading of only one of them. Nor is this a case involving a scheme common to both sets of transactions.... Rather, this is a case involving separate payments that were different in kind. That they are all labelled preferential is of no significance. They are still separate and do not arise out of the same conduct, for the elements of § 547(b) ... must be satisfied as to each of them. Because of those differences, the defendant cannot ... be charged with notice that the litigation involved the other transactions.

67 B.R. at 306, 308 (citations omitted). *Accord Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1283 (8th Cir.1988); *Hirsch v. Caesars Atlantic City (In re Colonial Realty Co.)*, Case No. 2–90–01980, Adv.P. No. 2–93–6311 (Bankr.D.Conn., November 2, 1994) (when the original complaint sought to avoid seven allegedly preferential transfers totalling $445,000, and the amended complaint would seek to avoid 12 allegedly fraudulent transfers totalling $845,000, the amendment would relate back as to the seven transactions originally described even though they were challenged under a new legal theory, but would not relate back as to the five transfers that were not mentioned in the original complaint).

Some courts, however, have found a relation back in trustee avoidance cases, not as noted *supra* on the basis of the debtor-creditor relationship, but because a common course of conduct linked the transfers alleged in the complaint and those identified in the amendment. For example, in *Pongetti v. Security Bank (In re Marlar)*, 120 B.R. 51 (Bankr.N.D.Miss.1989), relied upon by the plaintiff, the debtor executed two promissory notes in favor of the bank, one of which was purportedly secured by the debtor's crops. The crops sustained damage, and the debtor paid over proceeds from crop insurance to the bank post-petition. The trustee timely filed a complaint seeking to avoid that transfer under § 549(a) and on the ground that the bank failed to perfect its security interest. After expiration of the statute of limitations contained in § 549(d), the trustee sought to amend the complaint to avoid four additional post-petition transfers, all on account of the same notes payable to the bank, and all made from the crop proceeds or government agricultural programs. The court found that the amended complaint related back because all of the payments were directly related to the single crop loan transaction.[4]

4. The rather unique nature of a preference action distinguishes the instant case from *Tabacalera Cubana, S.A. v. Faber, Coe & Gregg, Inc.*, 379 F.Supp. 772 (S.D.N.Y.1974), also relied upon by the plaintiff. That case involved a dispute between the American owner of a Cuban cigar manufacturer and the government of Cuba, which seized the manufacturer, over entitlement to a series of payments from the importer of the cigars. The court held that an amended complaint by the owner which sought recovery for cigar shipments in addition to those described in the original complaint related back to the date of filing of the original complaint. Arguably, the importer should have been placed on notice by the original complaint that the owner would seek recovery for any payments which the importer should have paid to it rather than to the govern-

The tension between the two policy goals—the substantive goal of maximizing estate property for distribution to creditors and the procedural goal of securing a defendant's interest in fixing the time within which otherwise unassailable transfers are vulnerable to attack—must be resolved in favor of a restricted application of the relation back doctrine in preference actions. First it is observed that basic due process considerations mandate that such transferees, like any other defendant, must have timely notice of potential litigation so that the evidence necessary for a defense may be preserved. That concept does not conflict with a trustee's duties. A trustee has the statutory duty to collect and distribute estate property "as expeditiously as is compatible with the best interests of parties in interest." *See* § 704(1). A trustee's broad powers to examine a debtor's financial affairs, *see, e.g.,* §§ 341(a), 343; Rule 2004 Fed.R.Bankr.P., should, in the absence of concealment, disclose preferential transfers quickly, so that all such transfers may be identified in the original complaint. Strict application of the statute of limitations will give trustees an incentive to pursue preferential transfers expeditiously, without undue prejudice to the goal of maximizing the estate.

I accordingly conclude that in the preference context, each alleged preference should be considered a distinct transaction which would not relate back to any other transaction in the absence of an underlying unifying scheme or course of conduct.

ment of Cuba; if any one of those payments was improper, then all of them were. In the instant case, however, as noted, each alleged preference stands or falls independently of any other one based upon proof of the elements of § 547(b) and the existence of defenses under § 547(c).

It is also noted that preference actions stand in contrast to actions to avoid fraudulent transfers, which often involve a common scheme to defraud which provides a nexus for relation back. For example, in *In re Gerardo Leasing, Inc., supra,* 173 B.R. at 390–91, the court held that an amendment alleging additional fraudulent payments would relate back where the timing and amount of the payments suggested that they were "part of the common scheme or pattern of fraudulent conduct."

### 4. *Application To The Instant Proceeding*

Construing the Third Amended Complaint liberally in the plaintiff's favor, as I must do under the motion to dismiss standard, *see supra,* n. 2, I conclude that he can prove no set of facts which would permit relation back in the instant proceeding. The Original Complaint, which was the only one filed prior to expiration of the statute of limitations, stated only that the "debtor, within 90 days of the filing for bankruptcy, paid to the defendant $79,237.03 on account of an antecedent debt." The proposed amendment attempts to include a payment to the defendant from Carl Lecher, Inc., allegedly made on the debtor's behalf. The Original Complaint did not even suggest that any portion of the money paid to the defendant involved that indirect transfer. The purpose of the defendant's motion for a more definite statement was to require the plaintiff to allege each transaction separately so that the defendant could evaluate the merits of each claimed preference and assert any available defenses. When the First Amended Complaint was filed, it specifically identified six transactions, none of which even arguably included the alleged transfer from Carl Lecher, Inc. The First Amended Complaint did describe an indirect transfer from the B.J. Dolan Company (later amended to correct the transferor as The Hawley Construction Co.), but there is nothing in the Third Amended Complaint to suggest that the two transfers arose out of common conduct or a common transaction, occurrence, or scheme of any kind.[5] It is noted that the defendant

5. The plaintiff's December 27, 1993 pretrial memorandum suggests that there was a July 19, 1990 meeting between the debtor's principal and representatives of the defendant to discuss the debtor's sizeable account arrearage, and that following that meeting, the defendant attempted to collect the arrearage from third parties who owed the debtor money. Those allegations were not included in any pleading, and may not be considered in determining whether the Third Count of the Third Amended Complaint is time barred. Even if they had been, however, those allegations do not establish that the Hawley Construction and Carl Lecher payments arose out of common conduct or a common transaction or occurrence. The defendant's collection efforts, which the plaintiff does not challenge as unlawful, do not constitute a "common scheme" suffi-

did not object to the filing of the First Amended Complaint.[6] Further, evidence as to the voidability of the Carl Lecher payment would not be relevant to the issue of the voidability of the Hawley Construction payment.[7]

The "conduct, transaction, or occurrence set forth or attempted to be set forth" in the Original Complaint and First Amended Complaint was not the debtor-creditor relationship, but a series of six distinct transactions, each of which was potentially voidable as a preference, but which were otherwise unrelated. Construed liberally in the plaintiff's favor, the Original Complaint placed the defendant on notice that it would have to defend against a preference attack as to transfers from the debtor aggregating $79,237.03; the Third Amended Complaint would add a new transfer from a third party not identified in the previous complaints, and would seek the recovery of alleged preferences totalling $87,202.50. Even under the liberal notice pleading standards embraced by the federal rules, the defendant cannot fairly be charged with having received notice of the cause of action asserted by Count Three of the Third Amended Complaint within the limitations period. Under the plaintiff's argument, a trustee could file a complaint against a poten-

tial preference defendant, alleging that one or more transfers occurred within the preference period, and be free to amend the complaint after expiration of the statute of limitations to allege any other transfers to that defendant or its transferees. That result would create marketplace chaos.

The plaintiff also argues that the defendant is not prejudiced by the proposed amendment because it had notice of the claim that the Carl Lecher, Inc. payment was a preference because the defendant's own records showed that it received the payment. *See* Memorandum of Law in Support of Trustee's Motion for Leave to Amend Complaint, filed March 21, 1994, at p. 4. I disagree. Assuming that the defendant's records did reflect the transfer, that fact does not establish that the defendant was on notice that the plaintiff would claim that the transaction was a preference. As noted, not every payment received within the preference period on a debtor's account is a preference. Indeed, the trustee has acknowledged the existence of complete defenses to four of the transfers alleged in the First Amended Complaint. *See* Motion for Leave to Amend Complaint, filed December 27, 1993. *Cf. Aslanidis v. United States Lines, Inc.*, 7 F.3d 1067, 1076 (2d Cir.1993) (amendment specify-

---

cient to put the defendant on notice that if one payment was challenged, the other would be vulnerable. The memorandum does not allege any relationship between the Hawley Construction and Carl Lecher payments. One payment allegedly arose out of the satisfaction of a mechanics lien; the other was a voluntary payment. *See* Plaintiff's Pretrial Memorandum of Law at p. 3.

**6.** The First Amended Complaint was filed after the expiration of the statute of limitations, so that even if the allegation of the B.J. Dolan Company transfer could be said to have put the defendant on notice that the Carl Lecher payment might be attacked, arguably that notice was not timely. I need not resolve the issue of whether the defendant's failure to object to the relation back of the First Amended Complaint to the Original Complaint resulted in the tolling of the statute of limitations, because even if it did, the proposed Third Amended Complaint does not relate back to either the Original or the First Amended Complaint.

**7.** It is noted that the plaintiff does not assert an equitable tolling of § 546(a) based on fraudulent

concealment, the plaintiff's failure to discover the alleged "wrong" despite due diligence to attempt to do so, or any similar theory. *See, e.g., Ernst & Young v. Matsumoto (In re United Ins. Management, Inc.),* 14 F.3d 1380, 1384–85 (9th Cir.1994); *In re Gerardo Leasing, Inc., supra,* 173 B.R. at 392. Nor is there any possibility that a theory of "continuing wrong" could toll the statute, since preference actions by definition cease to accrue upon the filing of the petition. Moreover, "equitable tolling's requirement of diligence is particularly acute in the bankruptcy context." *In re United Ins. Management, Inc., supra,* 14 F.3d at 1386. The plaintiff filed the instant complaint only days prior to the expiration of the statute of limitations, even though the record shows that the defendant was the petitioning creditor and was scheduled as a major creditor when the debtor filed its initial schedules on April 9, 1991. There is no suggestion that the trustee could not have discovered the Carl Lecher, Inc. payment through the ordinary avenues of discovery open to a trustee. In addition, while the defendant opposed some of the discovery sought by the plaintiff in connection with the Original Complaint, the plaintiff does not allege that that opposition was a bad faith attempt to conceal.

ing identity of "John Doe" defendant did not relate back even if named defendant had knowledge of accident; Rule 15(c) "require[s] notice of plaintiff's cause of action, not simply notice of the accident").

Although leave to amend under Rule 15(a) is to be "freely given when justice so requires," a statute of limitations such as § 546(a), which is designed to give defendants and potential defendants some measure of certainty as to the claims they may have to face, should not be circumvented in the guise of liberal amendment. *See Mackensworth v. S.S. Am. Merchant,* 28 F.3d 246, 252 (2d Cir.1994) ("To breathe life into this second claim would undermine the purpose of repose for which statutes of limitations were designed."); *Creditors' Comm. of Gaslight Club, Inc. v. Fredricks (In re Gaslight Club, Inc.),* 167 B.R. 507, 517–18 (Bankr.N.D.Ill. 1994) ("[A] party cannot use relation back to bootstrap time barred claims onto viable actions where the claims are not based on the same factual allegations.").

### ORDER

For the foregoing reasons, the plaintiff's motion for leave to file a Third Amended Complaint is GRANTED as to those technical amendments which (i) allege that the $28,609.87 payment described in Count Six of the Second Amended Complaint was made by The Hawley Construction Co., Inc., rather than by the B.J. Dolan Company; and (ii) delete four of the six transfers alleged in the Second Amended Complaint, but is DENIED as to the amendment which would seek to avoid the alleged transfer from Carl Lecher, Inc., in the amount of $14,264.90, and

IT IS SO ORDERED.