In re THE BENNETT FUNDING GROUP, INC., Debtor.

Richard C. Breeden, Trustee of the Bennett Funding Group, Inc., et al., Plaintiff,

v.

Cowen & Company, Defendant.

Bankruptcy No. 96–61376.
Adversary No. 98–70521A.

United States Bankruptcy Court, N.D. New York.

Nov. 14, 2001.

Saperston & Day, P.C., Attorneys for § 1104 Trustee, Rochester, NY, Gary J. O'Donnell, Of Counsel.

Mentor, Rudin & Trivelpiece, P.C., Attorneys for Defendant, Syracuse, NY, Jeffrey A. Dove, Of Counsel.

Willkie, Farr & Gallagher, Attorneys for Defendant, New York City, Roger Netzger, Of Counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently under consideration by the Court is a motion filed by Cowen & Company[1] ("Defendant") on December 22, 2000, seeking to dismiss the Amended Complaint of Richard C. Breeden, chapter 11 trustee ("Trustee") of the consolidated estates of The Bennett Funding Group, Inc. ("BFG") (collectively, the "Debtors"),[2] pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure ("Fed. R.Bankr.P.") for failure to state a claim upon which relief may be granted and Fed.R.Bankr.P. 7009 for failure to plead fraud with particularity. Defendant also argues that the first, second, third, fourth, sixth and seventh causes of action asserted by the Trustee in his Amended Complaint are barred by the statute of limitations. Opposition was filed by the Trustee on February 5, 2001.

The motion was originally scheduled to be heard on January 11, 2001, in Utica, New York, and was adjourned to February 8, 2001. After hearing oral argument on February 8, 2001, the Court afforded the parties an opportunity to file additional memoranda of law on the issue of whether a party can amend a complaint that "should have been taken off the table"

---

1. Cowen & Company is a securities brokerage.

2. The Debtors are eight related entities which filed for bankruptcy under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("Code"), between March 29, 1996, and July 25, 1997, on which date the debtor estates were consolidated pursuant to an order of this Court.

because Plaintiff had acknowledged that the Defendant had a valid affirmative defense for all the causes of action therein. The matter was submitted for decision on March 8, 2001.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of the adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a), (b)(1), (b)(2)(H), and (O).

### FACTS

On March 27, 1998, the Trustee filed a complaint ("Original Complaint") seeking to avoid certain transactions involving the Debtors and the Defendant. In the Original Complaint, the Trustee alleged, *inter alia*, that prior to the filing of the Debtors' petitions, certain of the Debtors were involved in equipment leasing and financing. In this regard, the Trustee alleged that in order to finance their capital and cash flow needs, the Debtors conducted a Ponzi scheme at the direction of certain insiders. The lease streams were inadequate to pay investors and financial institutions. Those monies that were received by the Debtors, whether from lessees, investors or finance institutions, were commingled into what the Trustee describes as a "Honeypot." The funds in the Honeypot were used to make payments to investors and others. In addition, the Trustee alleged that funds

were "siphoned off from the Honeypot at the direction of certain of the Debtors's [sic] insiders to their personal accounts or into investments by them." *See* Original Complaint at ¶ 12. In his Original Complaint, the Trustee alleged that payments were made by one or more of the Debtors to the Defendant using monies from the Honeypot. *See id.* at ¶ 14. Attached to the Original Complaint as Exhibit "A" is a list of amounts and dates on which such transfers into two accounts (hereinafter "BFG Accounts") allegedly occurred.[3]

On September 12, 2000, more than two years after filing his Original Complaint, the Trustee filed his Amended Complaint in which he specifically identified Patrick R. Bennett as one of the Debtors' "insiders." *See* Amended Complaint at ¶ 13. The Trustee also asserts that the siphoning, as referenced in the Original Complaint, "was in the form of checks and other negotiable instruments payable and belonging to the Debtors and various subsidiaries and affiliates thereof," which the insiders allegedly deposited into their personal and partnership accounts maintained by Defendant. *See id.* The BFG Accounts referenced in the original complaint are no longer included in Exhibit "A", attached to the Amended Complaint. Instead, the Trustee identifies three other accounts (hereinafter "Insiders" Accounts)[4] in Exhibit "A", attached to the

---

**3.** Exhibit "A" refers to Account 6K81609 and identifies seven deposits made between 7/16/92 and 9/12/95, totaling $579,316.99. It also refers to Account 6K812794 and identifies ten deposits made between 11/15/95 and 12/4/95, totaling $1,000,000. According to the Defendant, Account 6K91609 represents an account held by Defendant and belonging to Bennett Funding Group 401k Profit Sharing Plan and Account 6K81279–4 represents an account held by Defendant and belonging to BFG. *See* Memorandum of Law of Defendant, filed March 8, 2001, at 1.

**4.** Exhibit "A" of the Amended Complaint refers to Account 6K–81039 ($11,323,693 in transfers); 6K–81224 ($1,087,000 in transfers), and 6K–81547 ($1,116,677 in transfers). According to the Defendant, Account 6K–81039 was owned by Patrick R. Bennett, Account 6K–81224 was owned by Patrick Bennett and David Vinciguerra, and Account 6K–81547 was owned by Bennett Financial Associates, a partnership of which Patrick Bennett allegedly was general partner. *See* Defendant's Memorandum of Law at 2–3 and Trustee's Memorandum of Law, filed February 5, 2001 at 2. Apparently, it was the Trustee that

Amended Complaint. Exhibit "A" lists the total amounts deposited into each of the Insiders' Accounts but does not specify the dates of any deposits. The statutory bases for the first five causes of action in the Amended Complaint remain the same as stated in the Original Complaint. In those causes of action, the Trustee seeks pursuant to Code § 544 and § 548 to avoid alleged fraudulent transfers made to the Defendant by one or more of the Debtors and deposited into the Insiders' Accounts.

In his Amended Complaint, however, the Trustee not only seeks to avoid the transfers involving the Insiders' Accounts pursuant to Code § 544 and § 548, he also alleges in his sixth cause of action that the Defendant breached its contractual obligation to the Debtors by accepting for deposit checks belonging to the Debtors "over forged, altered, absent, invalid and/or otherwise fraudulent endorsements, and then collecting on said checks and other negotiable instruments." *See* Amended Complaint at ¶ 59. Trustee alleges in his seventh cause of action that Defendant's acceptance for deposit into the Insiders' Accounts, as well as the collection and handling of the proceeds of the checks and other negotiable instruments, constituted conversion.

### DISCUSSION

Before the Court considers the Defendant's argument that the Amended Complaint should be dismissed pursuant to Fed.R.Bankr.P. 7009 and 7012, it is necessary to determine whether the filing of the Amended Complaint relates back to that of

the Original Complaint. It is the Defendant's position that the Trustee should not be permitted to substitute time-barred claims for causes of action the Trustee acknowledges have no viability based on the Defendant's conduit defense.[5] In response, the Trustee points out that the Original Complaint remains a valid pleading. The Defendant never moved for its dismissal or made a motion for summary judgment based on its conduit defense.

■ The Court must agree with the Trustee that until the Original Complaint was actually dismissed or resolved by an order granting summary judgment in favor of the Defendant, it could be amended. *See In re Gaslight Club, Inc.,* 167 B.R. 507, 517 (Bankr.N.D.Ill.1994); *Cf. Cooper v. Shumway,* 780 F.2d 27, 29 (10th Cir.1985) (stating that "once judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated ..."). In *Gaslight Club* the court entered an order granting summary judgment in favor of the creditors' committee with respect to Count III of the original complaint. The order stated that " '[e]xecution of the judgment shall be stayed until this Court disposes of [Fredericks'] pending counterclaim by final order.' " *Gaslight Club,* 167 B.R. at 517. The court concluded that because Count III was not resolved by final order the original complaint could be amended or supplemented. *Id.* In the case now before this Court, there has been no final order entered resolving the allegations in the Original Complaint and, accordingly, it could be amended.

discovered the existence of the Insiders' Accounts upon review of the Debtors' records and provided copies of three Investment Account Agreements and other documents to the Defendant. *See id.*

**5.** "The 'mere conduit' defense immunizes a good faith recipient of an otherwise avoidable

transfer who acts as a mere intermediary and who cannot exercise dominion or control over the transferred property, where equitable principles justify such an exception." *In re Model Imperial, Inc.,* 250 B.R. 776, 801 (Bankr.S.D.Fla.2000) (citations omitted).

The critical issue is whether the allegations found in the Amended Complaint are barred by the statutes of limitation or whether they relate back to the filing of the Original Complaint pursuant to Fed.R.Bankr.P. 7015, incorporating by reference Federal Rule of Civil Procedure (Fed.R.Civ.P.)15(c). Fed.R.Civ.P. 15(c) provides that "[a]n amendment of a pleading relates back to the date of the original pleading when ... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleadings ..." It is intended to allow a plaintiff to set forth facts with greater specificity that may have been unknown at the time the original complaint was filed. *See Bank Brussels Lambert v. The Chase Manhattan Bank, N.A.,* 1999 WL 672302 at *2 (S.D.N.Y.1999) (citations omitted); *In re Everfresh Beverages, Inc.,* 238 B.R. 558, 573 (Bankr.S.D.N.Y.1999); *In re Gerardo Leasing, Inc.,* 173 B.R. 379, 388 (Bankr. N.D.Ill.1994). If, however, " 'a plaintiff attempts to interject entirely different conduct or different transactions or occurrences into a case, then relation back is not allowed.' " *Miller v. American President Lines, Ltd.,* 1999 WL 1338082 at *3 (N.D.Ohio 1999), quoting *F.D.I.C. v. Conner,* 20 F.3d 1376, 1385 (5th Cir.1994).

The cases make it clear that the important consideration is whether the Original Complaint gave the Defendant adequate notice of what must be defended against in the Amended Complaint. *See Stevelman v. Alias Research Inc.,* 174 F.3d 79, 86 (2d Cir.1999); *Holdridge v. Heyer–Schulte Corp. of Santa Barbara,* 440 F.Supp. 1088, 1093 (N.D.N.Y.1977) (citations omitted) (noting that the main inquiry under Fed.R.Civ.P. 15(c) is whether adequate notice has been given to the opposing party "by the general fact situation alleged in the original pleading."); *McCarthy v. Associated Clearing Bureau, Inc.,* 1999 WL 1995185 at *4 (D.Conn.1999) (citations omitted); *Gerardo Leasing,* 173 B.R. at 388; *Gaslight Club,* 167 B.R. at 517. Information provided by the parties in papers subsequently filed with the Court generally is not to be considered in its determination of whether there has been adequate notice. *See Holdridge,* 440 F.Supp. at 1094.

In both complaints herein, the Trustee alleges that the Debtors were operating a Ponzi scheme. The Trustee also alleges that there were a series of transfers made by the Debtors to the Defendant as part of that scheme to hinder, delay or defraud creditors. Where there are a series of transfers, it is necessary that the Court examine

> whether the events are linked by some underlying conduct or transaction, so that the defendant may fairly be charged with notice that the plaintiff might amend his complaint to allege another event in the series after conducting discovery, or whether each event is truly an independent transaction.

*In re Austin Driveway Services, Inc.,* 179 B.R. 390, 396 (Bankr.D.Conn.1995); *see also Gerardo Leasing,* 173 B.R. at 389 (stating that "[c]onsiderable difficulty arises when court[s] are confronted with an original complaint which pleads a transaction or series of transactions and amendments which seek only to add transactions similar to those already pleaded."). Furthermore, when a series of events or transactions involves allegations of fraud,

> "courts have struggled to find the appropriate balance between the certainty that statutes of limitations are intended to provide and recognizing the difficulty that plaintiffs often have in defining the extent and boundaries of fraudulent acts perpetrated against them."

*Everfresh Beverages,* 238 B.R. at 574. The court in *Everfresh Beverages* concluded that the relationship back standard should be read broadly where there are allegations of fraud (citation omitted). *Id.; see also I.L. G.W.U. Nat'l Retirement Fund v. Meredith Grey, Inc.,* 190 F.R.D. 324, 328 (S.D.N.Y.1999) (noting that "[t]he Second Circuit has held that this Rule [Fed. R.Civ.P. 15(c)] shall be 'liberally construed.'" (citing *Mackensworth v. S.S. American Merchant,* 28 F.3d 246, 251 (2d Cir.1994))).

Applying even the most liberal standard to the Original Complaint, this Court has difficulty accepting that the allegations asserted therein would have put the Defendant on notice of the new claims asserted in the Amended Complaint. The transactions described in the two complaints have distinguishing features which raise doubts in the mind of the Court that they represent a single series of transactions in what the Trustee alleges was a single overall scheme of the Debtors, labeled by the Trustee as a "Ponzi" scheme.

In support of his argument that the Amended Complaint relates back to the filing of the Original Complaint, the Trustee cites to *Gerardo Leasing.* In that case the chapter 7 trustee commenced an adversary proceeding on behalf of the estate of debtor Gerardo & Sons seeking to avoid and recover several alleged fraudulent and preferential transfers. *See Gerardo Leasing,* 173 B.R. at 383. The transfers in question involved payments to Vito Gerardo of $1,500 per week by debtor Gerardo & Sons, from its account at Northwest Commerce Bank. *See id.* The trustee later learned of approximately 150 boxes of business and financial records that had been missing. *Id.* After review of the documents, the trustee moved to consolidate three bankruptcy estates, asserting that there was extensive intermingling of the debtors' financial affairs. *Id.* The court granted the motion, and the trustee then sought to amend his original complaint. *Id.* at 383–84. In the amended complaint he alleged that Vito Gerardo received weekly payments of $1,500 from debtor Gerardo Leasing, beginning a week after receiving the last weekly payment from Gerardo & Sons. *Id.* at 384. Some of the checks were written on Gerardo Leasing's account with Northwest Commerce Bank; others were written on Gerardo Leasing's account at Parkway Bank & Trust. *Id.* The trustee took the position that the transfers were made as part of the same course of conduct and scheme. *Id.* at 390. The Defendants argued that the claims in the amended complaint should not relate back as the transfers involved were made by different debtors, through different accounts and at different times. *Id.* at 389. The court found that

[t]he timing between the end of the payments by Gerardo & Sons and the start of payments by Gerardo Leasing, coupled with the similarity in amount and frequency in payment; the possibility that these payments were made pursuant to an alleged service agreement; and the possibility that the various Debtors' finances were intermingled, may well lead to a finding following trial that the additional payments were in fact part of one ongoing series of transfers. Thus, it appears that the evidence pertaining to the second set of claims could have been introduced under the original complaint, liberally construed.

*Id.* at 391 (citation omitted). The court concluded that the amended complaint should be deemed to relate back based on the finding that the trustee might be able demonstrate a common series of transactions involving identical payments to the same transferee from "in effect the same transferor." *Id.*

This Court believes that the facts presented in *Gerardo Leasing* are distinguishable from those now before it. While the Trustee has skillfully crafted the Amended Complaint in such a way as to minimize the differences between the facts alleged in it and the Original Complaint, it is evident that there is not sufficient commonality between them to preclude an assertion by the Defendant of unfair surprise.

The Original Complaint identified transfers by the Debtors into the BFG Accounts on specific dates.[6] Trustee alleges said transfers were made by the Debtors from the Honeypot. Rather than making the allegations in the Original Complaint more definite and precise in the Amended Complaint, those claims involving the BFG Accounts identified in Exhibit "A" of the Original Complaint have been abandoned completely by the Trustee in the Amended Complaint. In the Amended Complaint he seeks to avoid transfers of funds deposited into the Insiders' Accounts. The Trustee alleges that the deposits into the Insiders' Accounts were "wrongfully accepted" under forged, invalid or fraudulent endorsements by insiders such as Patrick Bennett. These allegations suggest the possibility that some, if not all, of the monies deposited into the Insiders' Accounts may not have been transferred from the Honeypot, although perhaps intended for deposit therein. It also appears that the transfers described in the Original Complaint may have benefitted BFG; whereas, those described in the Amended Complaint inured to the benefit of insiders such as Patrick Bennett. In *Gerardo* the court found a

common course of conduct in that all transfers were in the same amount to the same insider of the debtors who arguably was an active participant in their activities. There are no allegations that the Defendant was an insider of the Debtors or that it knew of the alleged Ponzi scheme and actively participated in it.

Paragraph 13 of the Original Complaint states that "[a]s a result of these fraudulent practices, the Debtors were insolvent at least as early as 1990." Included in "these fraudulent practices" is the allegation in Paragraph 12 that funds were siphoned off from the Honeypot at the direction of certain of the Debtors' insiders to their personal accounts. It is not until Paragraph 14 that the Trustee mentions the Defendant and alleges that one or more of the Debtors transferred monies from the Honeypot to the Defendant. There are no allegations in the Original Complaint directly tying the Defendant to any of the activities of Patrick Bennett and other insiders in siphoning monies from the Honeypot. Indeed, having read over the Original Complaint and the list of transfers deposited into the BFG Accounts, it is difficult to conceive how the Original Complaint would have provided the Defendant with notice that it maintained the very personal accounts referenced in Paragraph 13. Simply stating that insiders of the Debtors were involved with siphoning monies into their personal accounts or into investments by them, without more, does not, in the opinion of the Court, provide the Defendant with reasonable notice of a basis for potential liability with respect to the Insider Accounts.

6. As noted at Footnote 7, *supra,* one account belonged to BFG 401k Profit Sharing Plan and the other to BFG. Although this information was not provided in the Original Complaint, the Court may consider basic extrinsic facts known to both parties. *See O'Loughlin v. National R.R. Passenger Corp.,* 928 F.2d 24, 27 (1st Cir.1991). In this case, both complaints identified the numbers of the accounts to which monies were deposited, and it is clear from the papers submitted to the Court that both the Defendant and the Trustee knew the identities of the account holders.

It is only in reading the Amended Complaint that the Defendant is given notice of the Insiders' Accounts and the allegations that it accepted checks for deposit with forged or invalid endorsements. It is the Amended Complaint that provides the Defendant with notice of a possible connection between the alleged siphoning activities of insiders such as Patrick Bennett and the Insider Accounts maintained by the Defendant.[7]

In *American President Lines,* the original complaint alleged that the decedent plaintiff had been exposed " 'to asbestos and hazardous substances other than asbestos causing unspecified injuries.' " *See American President Lines,* 1999 WL 1338082 at \*3. The amended complaint made no mention of asbestos, instead alleging that the plaintiff had been exposed to " 'benzene, benzene containing products and other hazardous substances' which caused 'injuries and losses, including, but not limited to Acute Myelogenous Leukemia.' " *Id.* The court found that the amendment did not relate back as it substantially altered the factual basis for the claim. *Id.* at \*4. The court noted that exposure to benzene "does not occur or act in the same manner as exposure to asbestos." *Id.* Thus, the court concluded that the defendants had received no notice of benzene claims by virtue of the original complaint. *Id.* It went on to comment that "[t]he Court would emasculate the statute of limitations requirement if it gave the phrase 'hazardous substances other than asbestos' the breadth the Plaintiff seeks." *Id.*

So too in *Holdridge* a case cited by the court in *American President Lines,* the

U.S. District Court for the Northern District of New York found that an amended complaint did not relate back to the filing of the original complaint. In the original complaint, the plaintiff sued for injuries related to an allegedly defective prosthesis implanted in her right breast in July 1971. The original complaint also made reference to a prosthesis that had been inserted in the plaintiff's right breast in May 1972 after the other one had been removed. *See Holdridge,* 440 F.Supp. at 1094. There were no allegations in the original complaint that the second prosthetic device was defective. The court found that the amended complaint, which sought to recover for injuries resulting from the insertion of prosthetic devices after July 1971, did not relate back to the filing of the original complaint despite the fact that there was reference to the prosthesis implanted in May 1972 in the original complaint. The court noted that although the defendant may have subsequently received notice of the additional allegations from the plaintiff's answers to interrogatories and from the plaintiff's memorandum of law in opposition to a motion for summary judgment, the original complaint did not provide adequate notice so as to allow for relationship back. *Id.*

In this case, the Trustee did provide factual background in his Original Complaint that funds had been "siphoned off from the Honeypot at the direction of certain of the Debtors's [sic] insiders to their personal accounts or into investments by them." However, it is difficult to discern how that particular statement/allegation in the Original Complaint would have provided the Defendant with notice that those "personal accounts" or "investments" in-

---

**7.** The fact that the Trustee may have apprized the Defendant of those accounts and the possibility that the checks that were deposited in them may have contained forged or invalid endorsements after filing the Original Complaint during the course of discovery does not change the Court's analysis. In considering whether an amended pleading relates back to the original pleading, it is the notice provided by the latter that is crucial. *See Holdridge,* 440 F.Supp. at 1094.

volved the Defendant directly, particularly when the accounts identified by the Trustee in the Original Complaint were accounts of BFG and not personal accounts of insiders.

Just as in *American President Lines* where the court found that the reference to "other hazardous substances" was not sufficient notice to the defendant that it would have to defend itself against injuries caused by benzene, as well as asbestos, the fact that the Trustee made reference to siphoning of funds by insiders into their personal and investment accounts in the Original Complaint does not open the door for the Trustee to use those allegations as a basis for now asserting that the Defendant had notice of the possibility that it would have to defend itself against claims with respect to transfers of monies ultimately deposited into accounts belonging to entities other than the Debtors under alleged forged or invalid endorsements. The allegation that certain aspects of the Debtors' business may have been operated as a Ponzi scheme does not provide a basis for concluding that the Debtors' and Defendant's relationship was pursuant to some common course or scheme. As asserted by the Defendant, it is

> not being sued because of any alleged involvement in any ponzi scheme or in the "honeypot." The fact that those transactions may be a common theme in lawsuits prosecuted by the Trustee is nothing more than window dressing . . .

[and] are wholly extraneous to the Trustee's purported claims against [the Defendant] for wrongful deposit of checks made out to the debtors into an account of the debtors' insiders.

*See* Defendant's Memorandum of Law, filed March 8, 2001, at 8–9.

The Court concludes that the Original Complaint failed to provide the Defendant with sufficient notice that the Trustee might in a subsequent pleading seek to avoid transfers made to the Defendant and deposited into the personal or partnership accounts of insiders of the Debtors, such as Patrick Bennett. Nor did the Original Complaint provide the Defendant with notice that the Trustee might seek to recover the monies under theories of breach of contract and conversion with respect to the alleged "wrongful acceptance" of certain checks deposited into the Insiders' Accounts identified in Exhibit "A" of the Amended Complaint. Therefore, the Trustee's first, second, third and fourth,[8] as well as the seventh,[9] causes of action in the Amended Complaint do not relate back to the filing of the Original Complaint and are time-barred. The Court is unable, based on the information provide in the Amended Complaint, to determine whether the sixth cause of action, which arguably may be subject to a longer statute of limitations as it is based on an alleged breach of contract, is also time-barred. Therefore, the Court will afford the Trustee an opportunity to amend the complaint

---

**8.** The first four causes of action in the Amended Complaint are based on Code § 544 and § 548. Pursuant to Code § 546, an action or proceeding under §§ 544 or 548 had to have been commenced no later than March 29, 1998 to be timely. The Amended Complaint was not filed until September 12, 2000.

**9.** The seventh cause of action is based on allegations of conversion. Code § 108 provides that if the period within which a debtor may commence an action has not expired before the filing of the petition, the trustee is entitled to commence such action before the later of (1) the end of such period or (2) two years after the order for relief. The limitation period for conversion under New York law is three years. *See* N.Y. Civ. Prac.L. & R. § 214(3) (McKinney 1990 & Supp.2001). Although the Trustee does not specify the dates of the alleged prepetition conversions, they clearly occurred if at all, more than three years before the Amended Complaint was filed in September 2000.

filed on September 12, 2000, to provide specifics as to those transactions which may not be time-barred, consistent with state law limitations and the findings herein. Accordingly, the Court need not address the other arguments raised by the Defendant pursuant to Fed.R.Bankr.P. 7009 and 7012 with respect to the Amended Complaint at this time.

Based on the foregoing, it is hereby

ORDERED that the first, second, third, fourth and seventh causes of action set out in the Amended Complaint are time-barred and those claims cannot be maintained against the Defendant; it is further

ORDERED that the sixth cause of action set out in the Amended Complaint will be dismissed as untimely unless the Trustee amends the complaint, filed on September 12, 2000, and files said amended complaint with the Court and serves it on the Defendant within 20 days of the date of this Order providing specifics as to any transfers for which a viable cause of action based on breach of contract may still exist.